## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Siran Xie,<br><br>          Plaintiff,<br><br>  vs.<br><br>Seattle Service Bureau, Inc. *d/b/a* National Service Bureau,<br><br>         Defendants. | Case No.:<br><br><br>**<ins>COMPLAINT</ins>**<br><br><br><br>**JURY TRIAL DEMANDED** |

### <ins>COMPLAINT AND JURY DEMAND</ins>

1.      Plaintiff Siran Xie ("Plaintiff") alleges violations of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA").

### <ins>JURISDICTION AND VENUE</ins>

2.      This Court has jurisdiction under 15 U.S.C § 1692k and 28 U.S.C. § 1331. Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) because: Plaintiff resides in this Judicial District; Defendant is registered and transacts business in this Judicial District; and the events or conduct giving rise to the claims occurred in this Judicial District.

### <ins>PARTIES</ins>

3.      Plaintiff Siran Xie (hereinafter "Plaintiff") is a natural person, and citizen of the State of Minnesota.

4.      Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and/or a person affected by a violation of the FDCPA.

5.      Defendant Seattle Service Bureau, Inc. is Washington corporation with its principal place of business located at 18912 North Creek Parkway, Suite 205, Bothell, Washington, 98011.  Defendant Seattle Service Bureau, Inc. is registered to conduct business in Minnesota under the assumed name National Service Bureau (hereinafter "Defendant" or "NSB").  CT Corporation System, Inc. is the registered agent authorized to accept service on behalf of Defendant at 1010 Dale Street North, St. Paul, Minnesota, 55117.

6.      Defendant regularly uses the mail and telephone in a business, the principal purpose of which is the collection of debts.

7.      Defendant regularly collects or attempts to collect debts for other parties.

8.      Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

9.      Defendant was acting as debt collector with respect to the collection of Plaintiff's alleged debt as described in paragraphs 10 - 12.

## FACTUAL ALLEGATIONS

10.      Sometime prior to October 2016, Defendant alleges that Plaintiff incurred a debt with Unified Fire Authority (hereinafter "UFA") for medical and/or ambulance services in Utah.  As such, the alleged debt with UFA is a debt arising from transactions incurred for personal, family or household purposes.

11.      In or around 2014 the alleged UFA debt was transferred or sold to Mountain Land Collections for the purposes of collection.

2

12.    On or around October 2016, the alleged UFA debt was subsequently transferred or sold to Defendant for the purposes of collection.

**DEFENDANT COLLECTS MORE THAN WHAT IS ALLEGEDLY OWED**

13.    On or about October 18, 2016, Defendant communicated with Plaintiff in an attempt to collect the alleged UFA debt from Plaintiff by sending a collection letter to Plaintiff (hereinafter the "October Letter").

14.    The October Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

15.    The October Letter stated that:

    a.    the principal balance on the UFA debt was $1,214.76;

    b.    the UFA debt had accrued interest in the amount of $233.95 at the time it was assigned to Defendant;

    c.    the UFA debt had accrued $0.80 in interest charges since Defendant obtained the account; and

    d.    Plaintiff owed Defendant a total amount of $1,449.51.

16.    As of December 29, 2016, Defendant's online account system stated that Plaintiff had an outstanding balance of $1,463.89 with regards to the UFA debt.

17.    As of February 20, 2017, Defendant's online account system stated that Plaintiff had an outstanding balance of $1,474.47 with regards to the UFA debt.

18.    Defendant charged Plaintiff interest on the UFA debt in the amount of approximately five percent (5%) to six percent (6%).

19.     On October 18, 2016, Plaintiff did not owe UFA, Defendant, or any other entity $1,449.51 in connection with the alleged UFA debt.  Plaintiff has never owed any entity $1,449.51 in connection with the alleged UFA debt.

20.     On December 29, 2016, Plaintiff did not owe UFA, Defendant, or any other entity $1,463.89 in connection with the alleged UFA debt.  Plaintiff has never owed any entity $1,463.89 in connection with the alleged UFA debt.

21.     On February 20, 2017, Plaintiff did not owe UFA, Defendant, or any other entity $1,474.47 in connection with the alleged UFA debt.  Plaintiff has never owed any entity $1,474.47 in connection with the alleged UFA debt.

22.     Neither the underlying UFA debt nor state law allows for Defendant to charge a consumer additional interest of approximately 5% to 6%.

23.     The information provided to Plaintiff in the October Letter was objectively false.

24.     On December 29, 2016 and February 20, 2017, the information pertaining to the UFA debt on Defendant's online account system was objectively false.

**DEFENDANT FALSELY REPORTS PLAINTIFF'S CREDIT INFORMATION TO THE CREDIT BUREAUS**

25.     On or about October 14, 2016, in connection with the collection of the alleged debt, Defendant began reporting Plaintiff's account to TransUnion, LLC (hereinafter "TransUnion") and Equifax Inc. (hereinafter "Equifax").

26.     TransUnion and Equifax are consumer reporting agencies as that term is defined by 15 U.S.C. § 1681a(f).  TransUnion and Equifax are also known as a "credit reporting agency" and/or "credit bureau" (collectively "Credit Bureaus").

27.     Defendant's report to the Credit Bureaus was a communication containing credit information regarding Plaintiff and/or Plaintiff's alleged debt (collectively "Plaintiff's Credit Information").

28.     As of December 18, 2016, Defendant reported Plaintiff's Credit Information with an original balance of $1,448 and a current balance of $1,461.

29.     On December 18, 2016, Plaintiff did not owe UFA, Defendant, or any other entity $1,448 in connection with the alleged UFA debt.  Plaintiff has never owed any entity $1,448 in connection with the alleged UFA debt.

30.     On December 18, 2016, Plaintiff did not owe UFA, Defendant, or any other entity $1,461 in connection with the alleged UFA debt.  Plaintiff has never owed any entity $1,461 in connection with the alleged UFA debt.

31.     As of January 8, 2017, Defendant reported Plaintiff's Credit Information with a current balance of $1,465.

32.     On January 8, 2017, Plaintiff did not owe UFA, Defendant, or any other entity $1,465 in connection with the alleged UFA debt.  Plaintiff has never owed any entity $1,465 in connection with the alleged UFA debt.

33.     Defendant's representations to the Credit Bureaus regarding Plaintiff's Credit Information were objectively false.

5

34.     Defendant knew or should have known that it had falsely reported Plaintiff's Credit Information to the Credit Bureaus.

35.     Defendant engaged in debt collection activity by choosing to report Plaintiff's Credit Information to the Credit Bureaus.  *See McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 915 (8th Cir. 2014), 773 F.3d at 915 (citing *Edeh v. Midland Credit Management, Inc.*, 748 F.Supp.2d 1030 (D.Minn.2010)).

36.     Defendant reported Plaintiff's Credit Information to the Credit Bureaus to induce Plaintiff to pay the alleged debt.  *See McIvor*, 773 F.3d at 914 (quoting *Federal Trade Commission, Staff Opinion Letter*, 1997 WL 33791232 at *1 (December 23, 1997).

37.     Defendant's report to the Credit Bureaus was a "communication" as defined by 15 U.S.C. § 1692a(2).

38.     By wrongfully reporting Plaintiff's Credit Information to the Credit Bureaus, Defendant was attempting to induce and/or persuade Plaintiff to pay the alleged debt, where Plaintiff would otherwise not do so.

39.     By wrongfully reporting Plaintiff's Credit Information to the Credit Bureaus, Defendant was attempting to induce and/or persuade Plaintiff to communicate with Defendant, where Plaintiff would otherwise not do so.

40.     Credit reporting collection accounts negatively impacts the way Credit Bureaus calculate Plaintiff's credit scores.

41.     According to TransUnion's website "Your payment history makes up 35% of your [credit] score, while the amount you owe lenders represents 30%."  *See What is a*

*Credit Score?* (Feb. 21, 2017, 11:00 a.m.), https://www.transunion.com/credit-score; *see also How is my credit score calculated?* (February 21, 2017, 10:55 a.m.), https://help.equifax.com/app/answers/detail/a_id/138/~/information-factored-in-score (same); *What are the Different Credit Scoring Ranges?* (Feb. 21, 2017, 11:24 a.m.), http://www.experian.com/blogs/ask-experian/infographic-what-are-the-different-scoring-ranges/ (same); What's in my FICO Scores (Feb. 24, 2017, 2:01 p.m.), http://www.myfico.com/credit-education/whats-in-your-credit-score/ (same).

42.    Defendant's wrongful and false representations to the Credit Bureaus regarding Plaintiff's Credit Information lowered Plaintiff's credit score, FICO score and/or credit rating.

43.    Immediately after Defendant reported Plaintiff's Credit Information to the Credit Bureaus, Plaintiff's credit score with TransUnion dropped by approximately 35 points.

44.    Immediately after Defendant reported Plaintiff's Credit Information to the Credit Bureaus, Plaintiff's credit score with Equifax dropped by approximately 36 points.

45.    At all relevant times Plaintiff's credit score with Experian remained in good standing and unchanged.

46.    Plaintiff suffered actual injury, harm and monetary damages as result of Defendant's wrongful and false credit reporting.

47.    Plaintiff spent a significant amount of time analyzing and reviewing his credit report, financial accounts, and credit score through internet research, multiple consumer credit monitoring websites, and with his attorneys.

48.    Due to the financial uncertainty caused be Defendant's wrongful reporting and debt collection activity, Plaintiff purchased the services of myfico.com to ensure the accuracy of his credit report.

49.    The confusion and uncertainty surrounding Plaintiff's credit's report, credit rating, credit score and financial security made Plaintiff very anxious, nervous, scared, humiliated, embarrassed, angry and annoyed.

**DEFENDANT COMMUNICATES WITH PLAINTIFF WHILE PLAINTIFF WAS REPRESENTED BY AN ATTORNEY**

50.    On or around November 2016, Defendant began communicating with Plaintiff in an attempt to collect the alleged UFA debt from Plaintiff by placing a telephone calls to Plaintiff's cellular telephone.

51.    On or around December 7, 2016, Plaintiff was represented by John Carlin, a consumer protection attorney at Suburban Legal Group, PC.  As such, Plaintiff informed Defendant that he was represented by an attorney regarding the alleged UFA debt on or around December 7, 2016.

52.    At that point, Defendant asked Plaintiff for the contact information for his attorney.  Plaintiff immediately provided Defendant with Mr. Carlin's name and contact information.

53.    As of the date of this Complaint, Defendant has never communicated with or attempted to communicate with Plaintiff's attorney, Mr. Carlin.

54.    After December 7, 2016, Defendant continued to communicate with Plaintiff directly and/or attempt to communicate with Plaintiff directly in connection with the collection of the alleged UFA debt.

55.    After December 7, 2016, Defendant continued to place telephone calls to Plaintiff's cellular telephone in connection with the collection of the alleged UFA debt.

56.    Plaintiff had to waste time tending to Defendant's unwanted telephone calls after informing Defendant he was represented by an attorney.

57.    Through Defendant's conduct, Defendant intentionally deceived Plaintiff, intentionally misled Plaintiff, made material misrepresentations to Plaintiff concerning the alleged debt, and used unfair and unconscionable means to collect or attempt to collect the alleged debt by among other things: collecting an amount of money that Plaintiff does not owe; attempting to collect excess fees, charges or interest; communicating with Plaintiff when he was represented by an attorney; and falsely reporting Plaintiff's Credit Information to the Credit Bureaus.

58.    Based on the aforementioned facts in the Complaint, Defendant's conduct was misleading, abusive, deceptive, harassing, and inconvenient. Defendant's conduct made Plaintiff extremely upset, nervous, agitated, anxious and annoyed.

59.    As a result of Defendant's conduct, Plaintiff has suffered both tangible and intangible injuries.  Specifically, Plaintiff has suffered harm because:

a. Plaintiff has suffered monetary damages, emotional distress, stress, aggravation, anger, anxiety, embarrassment, humiliation, nuisance, inconvenience, and annoyance;

b. Plaintiff has been harassed and misled by Defendant's unlawful and wrongful collection efforts. Defendant violated Plaintiff's right not be a target of unlawful, wrongful and misleading debt collection communications and conduct;

c. Defendant created the real risk of Plaintiff paying Defendant more than what was owed and/or paying Defendant when no payment obligation existed;

d. Defendant negatively affected Plaintiff's credit score, which impeded or is likely to impede Plaintiff's ability for lower-cost credit, Plaintiff's ability to find a job, and/or Plaintiff's ability to find housing;

e. Defendant created confusion as to Plaintiff's credit history and caused emotional stress and aggravation regarding his financial security;

f. Plaintiff has lost time having to engage in needless investigation to determine the accuracy of the alleged debt and his credit report, including but not limited to tending to phone calls, tending to emails and text messages, internet research, communications with Defendant, communications with Credit Bureaus, obtaining consumer credit report services, communications with consumer credit report services, and communications, review and analysis with his attorneys;

g. Plaintiff has incurred costs and expenses consulting with his attorneys as a result of Defendant's unlawful and wrongful collection efforts; and

h. Plaintiff has incurred costs and expenses regarding the research and analysis of his credit report as a result of Defendant's unlawful and wrongful collection efforts.

60.    All of Plaintiff's above-referenced injuries – both tangible and intangible – are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit and the United States District Court for the District of Minnesota.

10

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## COMMUNICATION IN CONNECTION WITH DEBT COLLECTION

61.     Plaintiff restates and re-alleges the preceding allegations of this Complaint.

62.     Defendant communicated with Plaintiff in connection with the collection of the alleged debt when Defendant knew that Plaintiff was represented by an attorney with respect to the alleged debt.

63.     At the time Defendant communicated with Plaintiff in connection with the collection of the alleged debt, Defendant had knowledge of Plaintiff's attorney's name and address.

64.     At the time Defendant communicated with Plaintiff in connection with the collection of the alleged debt, Defendant could have readily ascertained the name and address of Plaintiff's attorney.

65.     Defendant's conduct violated 15 U.S.C. § 1692c(a)(2).

66.     As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT II
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## FALSE OR MISLEADING REPRESENTATIONS

67.     Plaintiff restates and re-alleges the preceding allegations of this Complaint.

68.     Defendant used false, deceptive and/or misleading means in connection with the collection of the alleged debt by:

  a.  Falsely representing the character, amount and/or legal status of the alleged debt;

  b.  Falsely representing that compensation, interest or fees may be lawfully received by Defendant for the collection of the alleged debt;

  c.  Threatening to collect an amount of money that could not legally be collected;

  d.  Creating uncertainty as to Plaintiff's credit history and creditworthiness;

  e.  Wrongfully and falsely reporting Plaintiff's Credit Information to the Credit Bureaus which Defendant knew was false or should have known was false;

  f.  Wrongfully and deceptively attempting to induce Plaintiff to pay the alleged debt, where Plaintiff would otherwise not do so;

  g.  Wrongfully and deceptively attempting to induce Plaintiff to communicate with Defendant, where Plaintiff would otherwise not do so; and

  h.  Wrongfully and deceptively communicating with or attempting to communicate with Plaintiff after Defendant knew that Plaintiff was represented by an attorney.

69.     Defendant's conduct violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(8), and 1692e(10).

70.     As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00 under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT III
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## UNFAIR PRACTICES

71.     Plaintiff restates and re-alleges the preceding allegations of this Complaint.

72.     Based on the aforementioned conduct, Defendant used unfair or

unconscionable means to collect or attempt to collect the alleged debt from Plaintiff.

73.     Defendant used unfair or unconscionable means to collect or attempt to

collect the alleged debt from Plaintiff by:

    a.  Collecting and/or attempting to collect an amount that was not expressly authorized by the agreement creating the debt and that was not permitted by law;

    b.  Communicating with Plaintiff and/or attempting to communicate with Plaintiff after Defendant knew that Plaintiff was represented by an attorney with regards to the alleged debt;

    c.  Creating uncertainty as to Plaintiff's credit history and creditworthiness;

    d.  Falsely reporting Plaintiff's Credit Information to the Credit Bureaus which Defendant knew was false or should have known was false;

    e.  Attempting to induce Plaintiff to pay the alleged debt, where Plaintiff would otherwise not do so; and

    f.  Attempting to induce Plaintiff to communicate with Defendant, where Plaintiff would otherwise not do so.

74.     Defendant's conduct violated 15 U.S.C. §§ 1692f and 1692f(1).

75.     As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to

actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages of up to $1,000.00

under 15 U.S.C. § 1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15

U.S.C. § 1692k(a)(3).

## JURY DEMAND

76.    Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff Siran Xie demands a trial by jury and prays for judgment against Defendant Seattle Service Bureau, Inc. *d/b/a* National Service Bureau as follows:

1.    Awarding judgment against Defendant in an amount to be determined at trial;

2.    Awarding Plaintiff actual damages, statutory damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1692k(a)(1) - (3) against Defendant;

3.    Awarding Plaintiff any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

4.    Awarding Plaintiff such other and further relief as the Court deems proper, just and equitable.

**TARSHISH CODY, PLC**

Dated:  February 24, 2017            By:    s/ Adam R. Strauss
                                           Adam R. Strauss (#0390942)
                                           ars@attorneysinmn.com
                                           Scott M. Cody (#0392137)
                                           scody@attorneysinmn.com
                                           6337 Penn Avenue South
                                           Minneapolis, Minnesota 55423
                                           Telephone: (952) 361-5556
                                           Facsimile: (952) 361-5559
                                           **ATTORNEYS FOR PLAINTIFF**